So the case is now submitted and we're moving on to the second case set for argument today, and that is Cruz Matas v. Blanche, case number 25-4848. Good morning, your honors, and may it please the court. I'm Thomas Virch from the University of Georgia, and this morning I have two students who will be presenting argument on our behalf. Kiro Gadorab will handle the opening, and Avery Hill will handle rebuttal, and I'll be at council table. Thank you, honors. Thank you. Good morning, your honors, and may it please the court. My name is Kiro Gadorab, and I represent the petitioner, Mr. Felix Cruz Matas. At this time, I'd like to request your four minutes for rebuttal. Felix is a lawful permanent resident with serious mental illness seeking protection under the Convention Against Torture. The immigration judge deemed him competent to represent himself without conducting a competency inquiry, but this court should remand the agency's decision for two reasons. First, because the immigration judge failed to abide by the procedural requirements of matter of MAM and violated the Franco-Gonzalez class action injunction by refusing to order a competency evaluation. And second, the immigration judge denied Felix due process when she paused interpretation while explaining his competency finding. First, when determining a competency in an immigration proceeding, the hearing officer must take rigorous measures to assess whether a noncitizen is capable of representing himself, and those measures were outlined in matter of MAM, which explains that the IJ must request the most updated medical records, ask about the medication effects, allow assistance for the noncitizen. I thought that was done here. Help me. I thought that the IJ did look at all of the different medical conditions and considered all that. So the first part of matter of MAM requires that the immigration judge requests the most updated medical records. And although the immigration judge considered the medical records 1, 2, and 3 up to the December filing, she did not request the January records. And that was important because in the December records, there was a note that his psychiatrist, Dr. Ortega, was monitoring Felix for a possible addition of antipsychotic medication and that she would follow up with him in January of the next year. So your claim basically comes down to you acknowledge the IJ reviewed the December records but didn't look to the January records. That's correct. That seems to be split pretty tight. I mean, if I remember right, remind me on MAM, that was like several months or even years that were out of date from the medical records. That's correct. But even in this court's understanding of Calderon Rodriguez, where there was an instance where there was evidence that DHS likely possessed updated medical records or more recent medical records because there was a note indicating that there was a potential follow up. That was enough to result in an abuse of discretion from the IJ not requesting those records. And in addition to not requesting the January records, she also misinterpreted the December records. So the note that Dr. Ortega left was that she was concerned about Felix's deteriorating mental health. And that's that's why she was monitoring him for possible antipsychotic medication. He represented himself in this proceeding, correct? That's correct. Is an immigration judge in this situation entitled to look at the ability of the petitioner representing himself? In terms of determining competency, in other words, if the person in front of me, I'm an immigration judge and impresses me with the individual's ability to raise the issue. Why isn't that enough? Because under matter of memory, it imposes an affirmative obligation on the IJ. They can't just rely on their personal observations of the pro se litigant. They have to, if there is an issue of competence to inquire further into their potential ability to represent himself. The IJ has to make the assessment of whether there are the indicia that you just identified. And if the IJ is watching the individual and concludes that, gee, this guy seems to know what's going on, is raising appropriate points and so forth. What is it that triggers because of the indicia? I mean, it seems to me the observation of the IJ has to be where the proposition starts with. Does the IJ observe such indicia? She should have, Your Honor. So, for example, there are things the IJ can look at what the pro se litigant is doing physically at the hearing. But even in observing the medical records, for example, this court's understanding in Lemus Escobar, they explain that something like significant prescriptions creates an indicia. Between July and December of that year, Dr. Ortega increased Felix's Remeron medication. She increased his Zoloft. She added Trazodone, and she was monitoring him for antipsychotic medication. That was because his mental health was deteriorating. And if that, in Lemus Escobar, creates an indicia, it should so here as well. And so although the IJ can rely on her personal observations to the extent of whether or not there is sufficient indicia raised, there are also things that automatically create an indicia that were present in the medical records that she reviewed. And that brings me to the second point, that she also violated the Franco-Gonzalez class action injunction when she refused to order a competency evaluation. And Franco-Gonzalez versus Holder is a class action injunction that protects detainees in ICE detention who have serious mental health conditions and requires that before an immigration judge places a pro se litigant into a hearing, the judge has to order a competency inquiry. Felix fits within that description. He's detained by ICE. He has a documented history of mental illness. He's on multiple psychotic medications that his doctor has steadily increased. And his treating psychiatrist decided to monitor him for a possible addition of medications because she was afraid that his severe anxiety was warping his sense of reality, which created a doubt of whether or not he could represent himself. Was there anything in the proceedings before the immigration judge that suggested that your client didn't know what was going on? Yes, Your Honor. Couldn't follow instructions, ask questions, make requests, or argue where appropriate with the IJ? Is there any indication of that? Yes, Your Honor. There are multiple instances where Felix had trouble following the directions of the court. There were 15 instances where the interpreter couldn't understand him because of his pattern of speech and because of his impulsivity. There were 43 pauses. There were 25 portions of the record that were untranslated. All of this showed that he was unable to properly present evidence to represent himself at these hearings. And those should have resulted in an issue that the immigration judge would have considered as something concerning to probe and to ask about his medication effects or to request updated medical records. All of that appeared before the immigration judge, but she didn't take any steps to further inquire about his mental health at that point. And importantly, she also received a letter from the California Collaborative for Immigrant Justice, which noted their concerns about Felix's ability to represent himself. These are three-barred attorneys writing to the immigration judge based on their personal observations and attaching the December records, noting that his psychiatrist was monitoring him for antipsychotic medication. And they did that to point out the fact that they were concerned about his ability to represent himself. And when the IJ considered that letter, she again misinterpreted the December records to say that Dr. Ortega explicitly denied giving him antipsychotic medication. That finding is incorrect. What Dr. Ortega actually said was that she was concerned about his mental health and that she was considering placing him on antipsychotic medication. And that's why she had scheduled a follow-up in January. I'd like to go to my last point that the immigration judge violated due process by pausing interpretation while she explained her competency finding to Mr. Felix. In an immigration proceeding, detainees have a right to be present at their hearing and to understand findings that affect their deportation status. They have a right to understand the judge's reasoning and, if necessary, to respond to it. And Felix had a hearing on February 3rd via WebEx, and he had an interpreter present with him. But when the immigration judge explained her findings, she paused interpretation. That means Felix, who doesn't speak English, wasn't able to respond or understand what was going on. And then the IJ afterwards resumed interpretation and closed the hearing. Felix had been completely excluded from the moment when the judge explained why she had deemed him competent to represent himself, which is the very decision that would determine whether or not he could continue representing himself in the removal proceeding that could result in his deportation. I'd like to note that earlier in that day, an attorney from the consulate appeared before the judge. He was not representing Mr. Felix. And Mr. Felix, after the immigration judge explained to Mr. Felix that he was not representing him, Felix responded with, Well, thank God he's here to represent me. That only shows that in the same hearing where she deemed him competent to represent himself, without allowing him with a chance to respond to those findings, he was unable to understand even what was going on at that proceeding and whether or not he was being represented by that attorney. He understood enough to tell the IJ, OK, I'll appeal. Correct. That's correct, Your Honor. But he didn't understand the nature of that proceeding and he didn't understand whether or not he was actually receiving assistance at that point, which is important in a due process case, especially with a with a pro se litigant who doesn't understand English and pausing interpretation at a moment where he could respond to certain reasonings that she was providing, such as the fact that his alleged inability to remember things was not, quote unquote, borne out by his medical records. Well, at that point, he could have responded by saying that he could have noted Dr. Ortega's note, for example, that he was forgetting to take his medicine at times. That's something that's in the medical records that show that his ability to his inability to remember things. Additionally, when the IJ said that he'd been able to identify potential evidence and he was able to meaningfully participate throughout the hearings, like you noted, he could have asked Mr. Byron Hernandez, who is his friend, to write an affidavit explaining that he was the one helping Felix make these filings and present this evidence in court. And then when the IJ questioned whether he had difficulty understanding his proceedings, he could have attempted to explain how and why Dr. Ortega was deciding to place him and monitor him for antipsychotic medication. That's why this court should reverse the agency's decision and remand Felix's case for a proper competency determination. Thank you. Thank you. We'll hear from the government. The other way. There you go. The only one who needs it this way today. Good morning, and may it please the court. Jennifer Williams for the attorney general. The immigration judge in this case determined that there was insufficient indicia of incompetency under matter of M.A.M. to warrant a competency hearing and that there was no bona fide doubt as the petitioner's competency to represent himself under Franco Gonzalez. Under this court standard of review, these findings were not an abuse of discretion. The record shows that the IJ properly considered the record evidence, including petitioners mental health evaluations, as well as her own many interactions with petitioner through the course of multiple hearings, all of which showed that petitioner under matter of M.A.M. displayed a rational, factual understanding of the nature and the object of the proceedings against him and was able to present evidence relevant to his eligibility for protection from removal. And also, can you address the the updated medical records? Is there I mean, at what point do you have to request updated medical records here? They're saying, well, you know, we have a month and their basis is said we're going to follow up in a month. You knew that there was a follow up. You had a duty. Why wasn't that a reasonable request to to have the IJ do? And at what point? I mean, we've said two years. You have to do it. Is one month just different? I believe under the facts of this case, it is different from specifically this court's decision in Calderon. And it's not just the fact that the mental health evaluation was from. Well, it was from December and the hearing was February. So it was approximately two months. But it's also the fact that this mental health evaluation came to the IJ's consideration through the submission by the CCIJ, which was dated at the end of January. So only a couple of weeks before the merits hearing. And the issue isn't that the petitioner had some sort of burden here to produce the most recent medical records. But the question is whether the IJ abused her discretion in not independently inquiring as to whether there were more recent records. And the CCIJ submitted this request only a couple of weeks before the merits hearing. This is what they submitted. There was no indication other than one reference in the medical record. Records, which wasn't even the assessment itself, right? I mean, the assessment is a summary or how does this work? It's a summary. It's a summary. And it indicates that there should be a follow up appointment. I believe it says 30 days for medication management. But I don't believe petitioner has submitted any evidence, even on appeal to the board in which he was represented, that there actually was a January follow up of some sort. So I don't believe we're talking about a case where there's a clear updated medical record that the IJ didn't consider. And the other part of this decision in Calderon that seems relevant is it's not just the time, but whether there are indications that updated medical records would be relevant to the court's consideration. And so I think the substance of the December evaluation is important, too. Yes, it talks about an updated or following up in 30 days for medication management. But it also indicates that petitioner was feeling better. In fact, Dr. Arteaga states that she would consider removing Remeron, that particular medication that he had been on since January if he continued to feel better. She mentions antipsychotic medication. But what she says is she doesn't believe she mentions it, but says he's likely perceiving the voices he claimed to be hearing as anxious or worried thoughts. And so there's some dispute about whether a fair interpretation made by the IJ is that in making that statement, she was saying it's not necessary at this time. If she thought it was necessary at the time, she would have prescribed it. But she clearly states likely perceiving audio hallucinations as anxious thoughts. He should be monitored. There should be a follow up appointment in 30 days. But there's nothing in there. There were other indications in Calderon other than the statement in the report that was a year old indicating a follow up. And the court spells them out in Calderon, but they're not present here. There's no other indication that there had been or that there could have been a serious deterioration in his medical condition that would be relevant by the February 3rd hearing date. There are a number of other issues that Petitioner raises in his brief that we respond to in ours. What about this pausing? I mean, I didn't know what to make of it because the pausing of the interpretation seems to me that that is that a common occurrence or is that uncommon? And why was it done? And I mean, what does it matter here? It's not clear from the record why it was done. And the board also didn't explicate on why it might have been done. That was his due process claim. And the board goes to the issue of prejudice, which was the very last thing that you mentioned. And it doesn't matter, even if there were two instances in which the IJ paused interpretation at two separate hearings. There were also hearings at which she did not pause interpretation. The December 11th hearing in which she explained her competency reasoning to Petitioner. And in fact, it was after that hearing that Petitioner managed to get the letter from the CCIJ explaining their concerns and submitting the most recent report. So it is clear throughout the course of his removal proceedings that there were many discussions about his competency. He understood what her reasoning was. There were medical records submitted. He testified extensively as to both his competency and the merits of his case. There's simply there's just no indication in the record that he didn't understand or wasn't able to present relevant evidence. So. One of the times that interpretation was paused was and I confess I've lost track of the dates, but there was a hearing where an attorney appeared at least nominally representing him. But as it unfolds, he's also representing the consulate because the Mexican consulate had been contacted. I guess one question is maybe more curiosity. You're a judge in the Ninth Circuit for a while. You see a lot of immigration cases offhand. I don't recall having an episode quite like that. And there's not a shortage of. Natives and citizens of Mexico appearing in immigration court. Is this something that I've just missed over time or is this happening very often? I. It seems unusual. Well, so and I kind of understand under the circumstances since it was Mr. Salazar, he he was at least temporarily representing. The person that we call the petitioner, Mr. Cruz Matas. And so and he said fine with halting the interpretation during the dialogue that he was having with her only. That's when it turns out she winds up summarizing everything that she said at other times about the competency determination. So that when I finally got a handle on. The other one I wasn't so sure of, and is it your position simply that there had been interpretation. The several other times that subject came up so that you are arguing the petitioner knew. What the determination was. Or is there some other explanation for the pause that we haven't been able to figure out from the record. So as to the as to the issue with Mr. Salazar in the second one, that's my understanding as well. He represented himself as his attorney. So there was a competency discussion with the person who the immigration judge thought was his attorney. They went through the competency concerns, presumably as his attorney. He didn't think there was a problem with it because he said, OK, that's fine. Then when it became clear that the discussion was going to be about convention against torture protection as to Mexico, he could no longer. He withdrew as his attorney because there was a conflict of interest, given that he was a representative of the Mexican government. As to the first instance, it was one of the October hearings, I believe. Again, the record doesn't indicate the petitioner was appearing via WebEx. I believe he left the call. And so because he left the call, the immigration judge paused interpretation. But. Whatever the reason was, our ultimate position in the position of the board was that there was no prejudice that for all these other reasons, she considered the medical reports. He testified during numerous other times about his competency concerns. He still has to show prejudice and he simply, you know, the court's decision, as we point out in our brief and Coleman are isn't relevant here because that was a different situation where the immigration judge had actually cut off the petitioner when he was testifying about the merits of his claim. That's not what happened here, at least not throughout the course of the removal proceedings. And again, he was represented before the board, but his due process claim again as to prejudice was sort of a vague claim that he could have presented other things, but he still hasn't shown either with respect to competency or with respect to the merits of his convention against torture claim. What he was prevented from. Presenting what other evidence there was that would be relevant to these determinations. I would also just point out, I believe the issue of the interpretations came up. Yes, the record contains some instances of pauses and undecipherable and whatnot, but the immigration judge, who's the finder of fact, made it clear that it was an issue with the interpreter and the interpreters phone that she had no problem understanding of the petition. And there are also a couple of instances in the record where the interpreter tells the immigration judge that she can't understand what the immigration judge is saying. So. There may have been there may have been an issue with with the phone, but the immigration judge made it clear that it wasn't an issue with petitioners pattern of speech. And there were also numerous opportunities to click the the IJ made sure that questions were re asked re answered. That the necessary information was that she understood the necessary information to make her determination that there was nothing petitioner was prevented from saying or that the IJ didn't understand. There are a number of other issues raised, but we believe our brief addresses them. If the court has no further questions, I think, I think we're good. Thank you. We ask that the court affirm the decision below. Thank you so much.  Get it back up. So, are you the tallest student in the immigration clinic at Georgia? I am. I think I'm a few inches taller than Kira, which is pretty awesome. Good morning. Your honors. My name is Avery Hill and I also represent the petitioner. First, this is initial matter. There was some discussion about the interpretation. However, on at 176 dash to 10 of the record, the interpreter himself expressed some concerns about Felix's pattern of speech. I don't remember anything in the record about technological issues. I know there was some some disagreement in the briefs. However, it's important to note that the interpreters explicitly saying that is his pattern of speech makes it difficult for him to understand himself. In addition, in the meeting in August, Dr. Schmidt, but you don't disagree that the IJ sort of put on the record that that wasn't true for her. The interpreter was on the phone or in that instance. Or was it in person? It was a WebEx meeting, so it was it was it was over the phone. It's also important to note that in August, Dr. Schmidt wrote down that he had poor grammatical construction and that his pattern of speech made it difficult for the doctor to understand him. So both of these things together demonstrate an inability for him to communicate effectively. And as I'm sure we all know, effective communication is a central part of representing your own claim. So this goes to the very heart of if he could. So we it seems like prejudice is the key issue here. And can you point us to something in the record where that made a specific difference that you could say, hey, he you know, he was prejudice in this way. There was some material claim. Or does this just go to your overall mental health assessment? So the prejudice, your honor, comes from the due process claim. So under the due process claim, we've identified two specific instances just to name two that he could have raised. He could have written an affidavit explaining how Mr. Hernandez is helping him because the immigration judge seems to factor in. Well, he was he was submitting all of these things. He had these his forms already. But he was very clear that he didn't he did not write those forms. He had Mr. Hernandez. What it was he was responding to. And the immigration judge had suggested what he needed to speak to. And he spoke to it. Now, we got somebody to help to gather the materials and fill out forms. But he knew what it was that she was asking him about. I think that was the point she made. That is what the immigration judge says, your honor. However, the transcript itself seems to belie this. And also there are multiple doctors who were who are pointing out that his pattern of speech makes it difficult to understand is his what he's trying to say. Also, after the translations, excuse me, after the incident with the the lawyer from the consulate, she she goes off the record. She talks to him. She comes back on. And then he says, have you have you ordered a competency hearing? She says, no, I already told you have it. And he says, well, when are you? And then he says, I was going to hire some other lawyers. But thank God this attorney from the from the consulate showed up. So he's clearly not understanding the exact parameters of this hearing. And in addition, we pointed out two specific instances of how he could have rebutted this claim of competency. And specifically in Coleman, RV, INS, this court said that while it is while we have to show prejudice, the conclusionary allegations themselves are not enough. But, quote, we do not require such explanation to find prejudice. But we've done more than that. We've actually pointed out two specific instances of what exactly he could have included in the record to rebut this claim. And I just briefly wanted to step back for a minute and say that the immigration judge never found that he was competent. The immigration says the threshold question of whether or not there's an indicia of incompetency or whether or not there's a bona fide doubt, he didn't even satisfy that minimum threshold requirement. So she never ordered a competency hearing. And she never sent him to a third party medical professional to determine whether or not he was a member of the Franco Gonzalez class. But but this indicia of incompetency is belied by the record. And many of the facts of this case are extremely similar to matter of MAM. And for these reasons, this court should reverse. Thank you. Thank you. Thank you. Oh, go ahead. Yes. Sorry, we're not done yet. I have a question of your supervisor. If we were to grant relief. Will you continue the representation? Thank you. Thank you. All right. Thank you. Thank you to both counsel. And again, we're we're grateful for the clinics that come in and the students that are very well prepared. We expect it from the government and you you met or exceeded your expectations, but you've exceeded what we what we expect from counsel. And that says a lot from from law students. So we we look forward to welcoming you into the bar in the near future. So thank you. All right.
judges: HAWKINS, CLIFTON, NELSON